

SO ORDERED,

Judge Katharine M. Samson
United States Bankruptcy Judge
Date Signed: January 29, 2020

**The Order of the Court is set forth below. The docket reflects the date entered.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:  VELMONT E. LEWIS JR.       CASE NO. 17-51357-KMS
        ALTEMICE M. LEWIS

     DEBTORS                   CHAPTER 7

ALTAMIC M. LEWIS[1]               PLAINTIFF

V.              ADV. PROC. NO. 17-06060-KMS

MASSACHUSETTS HIGHER EDUCATION     DEFENDANTS
ASSISTANCE CORPORATION d/b/a
AMERICAN STUDENT ASSISTANCE,
EDUCATIONAL CREDIT MANAGEMENT
CORPORATION and
THE UNITED STATES DEPARTMENT OF
EDUCATION

### OPINION HOLDING STUDENT LOAN DEBT NONDISCHARGEABLE

     This matter came on for trial on the Complaint to Determine Dischargeability of Student

Loan Pursuant to 11 U.S.C. § 523(a)(8), ECF No. 1,[2] by chapter 7 Debtor Altemice M. Lewis. The

---

[1] The bankruptcy petition, the adversary complaint, and the pretrial order each show a different spelling of Lewis's first name. The petition, which has not been amended, shows her name as "Altemice." *See In re Lewis*, Ch. 7 Case No. 17-51357-KMS, ECF No. 1 at 1 (Bankr. S.D. Miss. filed July 14, 2017). The complaint shows her name as "Altamice," with an "a" instead of an "e" in the second syllable. *See Lewis v. Mass. Higher Educ. Assistance Corp. (In re Lewis)*, Ch. 7 Case No. 17-51357-KMS, Adv. No. 17-06060-KMS, ECF No. 1 at 1 (Bankr. S.D. Miss. filed Nov. 27, 2017). The pretrial order states that the correct spelling is "Altamic." Pretrial Order ¶ (3), Adv. No. 17-06060-KMS, ECF No. 34 at 2. The pretrial order supersedes and amends the pleadings. *Id.* at 4-5. This Opinion therefore adopts "Altamic" for its adversary caption.

[2] "ECF No. ___" references a docket entry in this adversary proceeding.

United States Department of Education having been dismissed and American Student Assistance having transferred its interest in the promissory note to Educational Credit Management Corporation ("ECMC"), ECMC is the proper defendant, Pretrial Order ¶ (3), ECF No. 34 at 2. This proceeding is within the bankruptcy court's core jurisdiction under 28 U.S.C. § 157(b)(2)(I).

Lewis owes approximately $288,000 on a student loan consolidation loan ("Loan")[3] that she argues should be discharged because repaying it would impose an undue hardship on herself and her children. Alternatively, Lewis seeks discharge of some portion of the Loan. In the Fifth Circuit, a student loan may be discharged only if the debtor satisfies all three prongs of the test set out in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987). Because Lewis does not satisfy the *Brunner* test, neither the Loan nor any part of it may be discharged.

### FINDINGS OF FACT

Lewis, who is forty years old, makes approximately $92,000 a year as a neurophysiologist. Trial Tr. 33:10, 30:3-5, ECF No. 50; Sch. I, Pl.'s Ex. 3, ECF No. 43 at 5.[4] A neurophysiologist monitors a patient's brain and spinal cord during surgery: "Anything involving a nerve basically that the surgery could cause insult to, or the spinal cord, I monitor that and I give the surgeon feedback during the surgery." Tr. 15:11-14.

Lewis has been doing this kind of work for eight years and has worked for nine different companies. *Id.* at 15:6-7. She has developed the skills to handle "advanced cases," which with her years of experience and her relationships with hospital administrators keep her relevant and

---

[3] The parties stipulated that the underlying loans are federally insured student loans within the purview of 11 U.S.C. § 523(a)(8). Trial Tr. 3:22-25, ECF No. 50.

[4] Plaintiff's Exhibit 3 and Defendant's Exhibit 10 both purport to be Schedules I/J updated for trial. Both exhibits were stipulated to and admitted into evidence. Tr. 4:25-5:9. But they differ materially. Counsel for both parties questioned Lewis only on Plaintiff's exhibit. Accordingly, the Court considers only Plaintiff's exhibit.

valuable to her employer. *Id.* at 15:23-25; 17:2-21; 41:12-13. This job pays more than any other she knows of or has applied for: "I've not found any job that I can do that's going to pay me what I make now, or even close." *Id.* at 48:10-11. But it requires constant travel: "I live in the state of Mississippi, but I don't work in Mississippi. I travel to Connecticut, New York, Florida, Louisiana, Tennessee, Ohio, Chicago. Wherever they basically need me to cover a case." *Id.* at 15:19-22. And it requires a reliable car. *Id.* at 26:25-27:1.

Lewis did not set out to be a neurophysiologist. She wanted to be a chiropractor. So she borrowed money and earned a bachelor's degree from McNeese State University in Louisiana. Loan Hist., Def.'s Ex. 2, ECF No. 44-1 at 5; Tr. 11:6-7. She borrowed more money and in 2006 graduated from Texas Chiropractic College with a Doctor of Chiropractic degree. ECF No. 44-1 at 5; Tr. 11:7-13. She started her first chiropractic job, a paid post-externship. Tr. 11:13-18. Then her life derailed.

In 2007, Lewis gave birth to a baby boy, who died. *Id.* at 11:24-25. Three days later, she was diagnosed with a pulmonary embolism and then an "unnamed blood disorder," for which she will take blood thinners the rest of her life. *Id.* at 11:25-12:9. Lewis "of course" lost her job, and her financial disintegration began. *Id.* at 12:4-5.

Lewis has not worked in chiropractic since. She got a full-time job with the state of Texas, but lost it after her second child, another boy, was born prematurely and spent eight weeks in the neonatal intensive care unit. *Id.* at 12:16-13:1. After that, she took a part-time position teaching anatomy and physiology. *Id.* at 13:3-4. She got pregnant again, delivered another boy prematurely, and herself developed new medical problems, including "really bad" asthma. *Id.* at 13:8-12. From 2006 to 2012, Lewis's income averaged $30,000 to $35,000 a year. *Id.* at 13:20-24.

In 2012, Lewis began to rebound. Married by this time, she seized an opportunity to train for her current career, moving her husband and two sons to Louisiana to stay with her mother, and herself to Buffalo, New York, for the training program. *Id.* at 13:25-14:9.

But Lewis's problems were not over. Shortly after arriving in Buffalo, Lewis was diagnosed with Type I diabetes. *Id.* at 14:10-13. Then, after her training, she moved her husband and sons to Buffalo only to have the company lose that contract, resulting in a six-month stint of unemployment during which she moved back home to Louisiana. *Id.* at 14:18-15:4.

Although her income has been "fairly consistent" in the past year, *id.* at 16:23-25, it was not consistent over the previous three years. In 2015, total income for Lewis and her husband was $103,724. Tax Return, Def.'s Ex. 6, ECF No. 44-3 at 13. In 2016, it was $92,868. Tax Return, Def.'s Ex. 7, ECF No. 44-3 at 19. But in 2017, the year she and her husband filed their underlying chapter 7 case, their income plummeted to $42,546, with Lewis as the only breadwinner. Tax Return, Def.'s Ex. 8, ECF No. 44-4 at 1, 2.

Lewis is still the only breadwinner; her husband has been unemployed "for a long time." Tr. 18:3-4. Lewis has relied on him for childcare, *id.* at 17:25-18:1; the couple's 2017 tax return shows his occupation as "SAHD [Stay At Home Dad]," Def.'s Ex. 8, ECF No. 44-4 at 2.

Recently, Lewis and her husband separated—a fact that counsel for ECMC did not know until the morning of trial. Tr. 18:1-2, 50:1. The separation raises evidentiary issues.

First, according to her Schedule J, updated for trial but not filed in the case, Lewis, her children, and her husband all live in the same household, creating a household of four. Pl.'s Ex. 3, ECF No. 43 at 7. The Court finds instead, as Lewis's testimony supports, that the household comprises only three: Lewis and her children.

Second, Lewis now pays "a full-time nanny" to care for her boys when she is away. Tr. 18:3-7. But the $450 for childcare and education shown on the Schedule J does not include that expense. *Id.* at 18:4-6 ("[N]ow I have a nanny that I have to pay for, which I didn't include that in the information you asked for because this is all kind of sudden . . . ."). Lewis did not testify as to how much she pays the nanny. Accordingly, the Court finds on the only evidence before it that Lewis spends $450 a month for childcare and education.

Lewis brings home $5390 a month, with expenses totaling $5261, resulting in a monthly surplus of $129.[5] ECF No. 43 at 8. Her employer reimburses all her travel expenses, including food. Tr. 21:8-11 ("[E]verything that I do is reimbursable. So, when I eat, when I get a plane ticket, when I get a hotel room . . . it's reimbursed."). Notwithstanding, she spends $1000 for food and housekeeping supplies. ECF No. 43 at 8. She spends $425 for Internet, a streaming video service, and three cell phones for which the insurance alone costs $57. ECF No. 43 at 8; Tr. 32:15-33:3. Her car payment is $789, her car insurance is $242, and gas and maintenance are $260. ECF No. 43 at 8. Lewis's Schedule I, also updated for trial but not filed in the case, shows that she participates in an employee stock purchase plan at $229 a month. ECF No. 43 at 6.

Lewis has paid nothing on the Loan. Tr. 28:13-15. Until she filed for bankruptcy, she either was in an income-sensitive repayment program, in which her monthly "payment" was $0, or the Loan was in forbearance. *Id.* at 28:19-25; 29:1-4; 34:4-8.

The Loan principal was originally $207,177. Def.'s Ex. 12, Klisch Aff. ¶ 6, ECF No. 44-4 at 12. Twelve years later, Lewis owes $288,080. *Id.* ¶ 10, ECF No. 44-4 at 13. It is undisputed that the Loan could be completely paid off in 30 years with payments of approximately $1200 a month. Tr. 51:24-52:1; Def.'s Post-Trial Br., ECF No. 54 at 8.

---

[5] Beginning with this sentence, money amounts may be rounded to the nearest dollar.

## CONCLUSIONS OF LAW

Student loan debt is generally not dischargeable in bankruptcy. *See* 11 U.S.C. § 523(a)(8).

Only if repayment "would impose an undue hardship on the debtor and the debtor's dependents"

is discharge permissible. *Id.* Most recently, the Fifth Circuit Court of Appeals has interpreted the

"undue hardship" standard to mean "that student loans are not to be discharged unless requiring

repayment would impose intolerable difficulties on the debtor." *Thomas v. Dep't of Educ. (In re

Thomas)*, 931 F.3d 449, 454 (5th Cir. 2019).

Like most of the other circuits, the Fifth Circuit applies the three-prong *Brunner* test for

undue hardship:[6]

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396 (adopted in *U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d

89, 91 (5th Cir. 2003)). "The determination of undue hardship is case- and fact-specific." *King v.

Vt. Student Assistance Corp. (In re King)*, 368 B.R. 358, 367 (Bankr. D. Vt. 2007). The debtor

bears the burden of proof on each prong of the test and if even one prong is not satisfied, the debt

is not dischargeable. *Salyer v. Sallie Mae Servicing Corp. (In re Salyer)*, 348 B.R. 66, 70 (Bankr.

M.D. La. 2006).

### I. Because Lewis Does Not Satisfy Prong One, the Loan Is Not Dischargeable.

Prong One requires Lewis to prove that if forced to repay the Loan, she "cannot maintain,

based on current income and expenses, a 'minimal' standard of living for herself and her

---

[6] The Eighth Circuit applies a totality of the circumstances test. *See Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003). The First Circuit has declined to adopt either test, but its bankruptcy appellate panel has endorsed the totality of the circumstances test. *Bronsdon v. Educ. Credit Mgmt. Corp. (In re Bronsdon)*, 435 B.R. 791, 797, 800 (B.A.P. 1st Cir. 2010).

dependents." *Brunner*, 831 F.2d at 396. To repay student loans may require "major personal or financial sacrifices." *Quackenbush v. U.S. Dep't of Educ. (In re Quackenbush)*, No. 17-00059-NPO, 2018 WL 4056993, at *3 (Bankr. S.D. Miss. Aug. 24, 2018) (quoting *In re Salyer*, 348 B.R. at 71). But repayment should not force the debtor into "abject poverty." *Id.* (quoting *O'Donohoe v. Panhandle-Plains Higher Educ. Auth. (In re O'Donohoe)*, No. 12-03281, 2013 WL 2905275, at *3 (Bankr. S.D. Tex. June 13, 2013)).

Three questions determine whether a debtor satisfies Prong One: How much money does the debtor need to maintain a minimal standard of living? Does the debtor have any amount left after essential expenses to make payments on the student loans? Has the debtor "minimize[d] living expenses and maximize[d] financial resources"? *Id.* (quoting *Justice v. Educ. Credit Mgmt. Corp. (In re Justice)*, No. 15-01083-JDW, 2016 WL 6956642, at *4 (Bankr. N.D. Miss. Nov. 28, 2016)).

As to the first question, the "minimally necessary" amount to provide for self and family is the amount required "to ensure that the debtor's needs for care, including food, shelter, clothing, and medical treatment, are met." *Wynn v. Educ. Credit Mgmt. Corp. (In re Wynn)*, 378 B.R. 140, 148 (Bankr. S.D. Miss. 2007) (quoting *Gill v. Nelnet Loan Servs., Inc. (In re Gill)*, 326 B.R. 611, 626 (Bankr. E.D. Va. 2005)).

At least in part, this determination may be subjective: "Common sense, knowledge gained from ordinary observations in daily life, and general experience, establish skills from which most people can determine whether someone's expenses are unnecessary or unreasonable . . . ." *Ivory v. United States (In re Ivory)*, 269 B.R. 890, 899-900 (Bankr. N.D. Ala. 2001).

Objective standards may also apply. For income, some courts consider the federal poverty guidelines "a useful yardstick." *Knox v. Sallie Mae (In re Knox)*, No. 060060-EE, 2007 WL

3332060, at *5 (Bankr. S.D. Miss. Nov. 6, 2007) ("[C]ourts who have had debtors whose income is two or three times the federal poverty guidelines have found that to be a factor that weighed against the debtor."). For expenses, at least one court has applied the Collection Financial Standards used by the Internal Revenue Service to evaluate a delinquent taxpayer's ability to pay a tax debt ("IRS Standards" or "Standards"). *See In re Ivory*, 269 B.R. at 906. The Bankruptcy Code applies the IRS Standards in the means test that determines whether a debtor may file under chapter 7 or must file under chapter 13. *See* 11 U.S.C. § 707(b)(2)(A)(ii); *see also* https://www.justice.gov/ust/means-testing/20190501 (updated Nov. 20, 2019) (attached to Opinion as Ex. A). The Standards establish allowances for categories of expenses that imperfectly but adequately correspond to the categories in Schedule J. The Standards incorporate a "necessary expense test . . . defined as expenses that are necessary to provide for a taxpayer's (and his or her family's) health and welfare and/or production of income." https://www.irs.gov/businesses/small-businesses-self-employed/collection-financial-standards (page last reviewed or updated May 30, 2019) (attached to Opinion as Ex. B).

To determine the minimally necessary amount Lewis needs to support herself and her children, this Court applies both a subjective standard based on life experience and an objective standard based on the federal poverty guidelines and the IRS Standards applicable on the date of the trial. *See Bronsdon v. Educ. Credit Mgmt. Corp. (In re Bronsdon)*, 435 B.R. 791, 800 (B.A.P. 1st Cir. 2010) ("Undue hardship is measured as of trial date . . . .").

The federal poverty guideline for a three-person household is $21,330 per year. Dep't of Health & Human Servs. Poverty Guidelines, Annual Update, 84 Fed. Reg. 1167-02 (Feb. 1, 2019). At approximately $92,000, Lewis's income is more than quadruple the poverty guideline. Although not determinative, this fact weighs against dischargeability.

The IRS Standards are based on either national or local data, depending on the expense category. National standards apply to the following five necessary expenses: food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous. https://www.irs.gov/businesses/small-businesses-self-employed/national-standards-food-clothing -and-other-items (page last reviewed or updated May 30, 2019) (attached to Opinion as Ex. C). A national standard also applies to out-of-pocket health care costs. https://www.irs.gov/ businesses/small-businesses-self-employed/national-standards-out-of-pocket-health-care    (page last reviewed or updated July 29, 2019) (attached to Opinion as Ex. D). Local standards apply to housing and utility expenses. https://www.irs.gov/businesses/small-businesses-self-employed/ mississippi-local-standards-housing-and-utilities (page last reviewed or updated Mar. 15, 2019) (attached to Opinion as Ex. E). Both national and local standards apply to transportation expenses; the ownership cost of the vehicle (monthly lease or loan payment) is national and the operating cost is local. https://www.irs.gov/businesses/small-businesses-self-employed/local-standards-transportation (page last reviewed or updated July 29, 2019) (attached to Opinion as Ex. F).

The IRS Standards do not, however, include every expense necessary in a particular debtor's circumstances. For Lewis, the omitted expense is childcare.

Where the IRS Standards do not accurately represent expenses over which the Court believes Lewis has little or no control, her actual, higher expense equals the minimally necessary amount. The first such expense is her car payment. Although $789 seems objectively excessive, she apparently bought this vehicle after receiving her bankruptcy discharge. *Compare* Line 17a, ECF No. 44-2 at 26 *with* Line 17a, ECF No. 43 at 8. In the circumstances here, the Court accepts Lewis's credible testimony that her job requires reliable transportation and recognizes that post-discharge financing is expensive. The second such expense is $242 for car insurance. A car loan

requires the borrower to buy insurance in an amount adequate to protect the collateral, regardless of cost.

Where the IRS Standard allows more than Lewis spends, her actual, lower expense equals the minimally necessary amount. Accordingly, $150 is the minimally necessary amount for Lewis's health care. Line 11, ECF No. 43 at 8.

Where the IRS Standards subsume several kinds of expenses under one category and the Court believes one of Lewis's expenses in that category is excessive, the Court provides the minimally necessary amount for that expense. As a result, Lewis's $1000 for food and housekeeping supplies is cut to $700; her $260 for gas and car maintenance is cut to $100; and her $425 for telephone, cell phone, Internet, and cable services is cut to $300. *See* Lines 7, 6c, 12, ECF No. 43 at 8. Her food and housekeeping expense is cut because much of her own food costs are reimbursed; her gas and car maintenance are cut for the same reason, that gas costs would be included in her travel reimbursements; her cell phone, Internet, and cable services are cut because the Court believes $300 is sufficient for three cell phones, Internet, and a streaming video service. In addition, the $229 Lewis contributes to an employee stock purchase plan is wholly unnecessary.

Applying these adjustments to Lewis's expenses as shown on her updated Schedule J, her minimally necessary expenses total $4391:

| | |
|---|---|
| Rent | 1050 |
| Electricity | 160 |
| Water/sewer, garbage | 50 |
| Cell phones, Internet, cable services | 300 |
| Food and housekeeping supplies | 700 |
| Childcare | 450 |
| Clothing, laundry, dry cleaning | 150 |
| Personal care products and services | 100 |
| Medical, dental | 150 |
| Gas, car maintenance | 100 |
| Entertainment, clubs, etc. | 75 |
| Life insurance | 75 |

| | |
|---|---|
| Car insurance | 242 |
| Car payment | <u>789</u> |
| | 4391 |

This amount is substantially the same as the $4395 Lewis would be allowed under the IRS

Standards:

| | |
|---|---|
| Housing and utilities | 1616 |
| Food, housekeeping supplies, apparel and services, personal care products and services, miscellaneous | 1446 |
| Health care | 165 |
| Car maintenance, repairs, insurance, gas, and other expenses | 210 |
| Car payment | <u>508</u> |
| | 3945 |
| plus | |
| Childcare | <u>450</u> |
| | 4395 |

As to the second question under Prong One, whether Lewis has any amount left after

essential expenses to make payments on the Loan, the following calculation shows she can make

a $1200 payment and still have money left:

| | |
|---|---|
| Monthly take-home pay, Line 7, ECF No. 43 at 6 | 5390 |
| plus | |
| Employee stock purchase plan, *Id.*, Line 5h | 229 |
| Total take-home pay | 5619 |
| minus | |
| Minimally necessary expenses | <u>4391</u> |
| Available for Loan payment | 1228[7] |

---

[7] Lewis contributes $229 per month pretax to her employer's 401(k) plan. Line 5c, ECF No. 43 at 6. Courts are split on whether retirement contributions may be permitted as minimally necessary expenses in the undue hardship analysis. The majority view seems to be that they may not. *See, e.g., Educ. Credit Mgmt. Corp. v. Young*, 376 B.R. 795, 800 (E.D. Tex. 2007) ("While saving money for one's retirement is certainly wise, Congress, through its demanding standard, has chosen to give priority to the repayment of student loan debts."); *Perkins v. Pa. Higher Educ. Assistance Agency (In re Perkins)*, 318 B.R. 300, 306-07 (Bankr. M.D.N.C. 2004) ("Similarly, 401(k) contributions generally are not regarded as reasonably necessary for the support or maintenance of a debtor and thus may be considered as available income from which a debtor seeking a § 523(a)(8) undue hardship discharge could . . . repay an educational loan.") (collecting cases); *Speer v. Educ. Credit Mgmt. Corp. (In re Speer)*, 272 B.R. 186, 194 (Bankr. W.D. Tex. 2001) ("For the purpose of analysis the $140.00 retirement deduction will be added back into [Debtor's] income as it appears clear that Congress intended [§ 523(a)(8)] to be applied against debtors in as punitive a manner as possible."); *but see Augustin v. U.S. Dep't of Educ. (In re Augustin)*, 588 B.R. 141, 152 (Bankr. D. Md. 2018) ("[T]here is no *per*

As to the third question, Lewis has maximized her resources by seeking, training for, and working in the highest-paying job she could find. But she has not minimized expenses, as the Court's adjustments show.

With income more than four times the federal poverty guideline and more than the amount of the Loan payment available after minimally necessary expenses, Lewis has failed to meet her burden of proof under Prong One of the *Brunner* test. The Loan is therefore not dischargeable.

## II. Partial Discharge Is Not Available.

Sometimes, a debtor might be able to repay some but not all the student loan debt. In this circumstance, courts are divided on whether the debt may be discharged in part. *Grigas v. Sallie Mae Servicing Corp. (In re Grigas)*, 252 B.R. 866, 870 (Bankr. D.N.H. 2000) ("[T]he issue of whether partial discharge is available under § 523(a)(8) has proved vexing to the judiciary . . . ."). Although no controlling opinion has issued from the Fifth Circuit, some courts within the circuit have held that a partial discharge may be granted under § 523(a)(8) through the court's equitable powers under § 105(a). *See, e.g., Educ. Credit Mgmt. Corp. v. Young*, 376 B.R. 795, 801 (E.D. Tex. 2007); *Nary v. Complete Source (In re Nary)*, 253 B.R. 752, 767 (N.D. Tex. 2000); *contra Roach v. United Student Aid Fund, Inc. (In re Roach)*, 288 B.R. 437, 448 (Bankr. E.D. La. 2003) ("partial discharges are not permitted").

---

*se* rule that these types of expenses [including retirement contributions] are unnecessary to maintaining a minimal standard of living."); *Larson v. United States (In re Larson)*, 426 B.R. 782, 786, 792-93 (Bankr. N.D. Ill. 2010) (holding that $86 retirement contribution was permissible given that Debtor was 58 years old and had minimal savings and meager income compared to expenses; employer matched 90% of Debtor's contributions; contributions were relatively small; and rest of budget was frugal); *Allen v. Am. Educ. Servs. (In re Allen)*, 329 B.R. 544, 547, 551 (Bankr. W.D. Pa. 2005) (holding that $111.67 retirement contribution was permissible given that Debtor was 60 years old and had no retirement savings). Here, Lewis's monthly take-home pay covers both her minimally necessary expenses and the Loan payment even without adding back in her 401(k) contribution. Consequently, the Court does not reach the question of whether a retirement contribution may be a minimally necessary expense under the undue hardship analysis.

Most courts that grant a partial discharge require proof that repaying that portion of the loan would impose an undue hardship. *See Young*, 376 B.R. at 801 ("Though the Fifth Circuit Court of Appeals has not weighed in on the issue, the other circuit courts that have done so have all agreed that a finding of undue hardship necessarily precedes the bankruptcy court's exercise of its equitable powers."); *but see Manion v. Modeen (In re Modeen)*, 586 B.R. 298, 305-06 (Bankr. W.D. Wis. 2018) (granting partial discharge even though debtor demonstrated no exceptional circumstance and therefore failed to meet all elements under *Brunner*).

Without reaching the question of whether partial discharge is permitted, this Court agrees that if it is, the debtor must prove undue hardship as to the portion of the loan to be discharged. Accordingly, if partial discharge is permitted, it is not available to Lewis, who under Prong One of *Brunner* can maintain a minimal standard of living and repay the Loan in full.

## CONCLUSION

Because Lewis did not prove under § 523(a)(8) that repaying the Loan will impose an undue hardship on herself and her children, the Loan is not dischargeable. Judgment will be entered accordingly. This decision is without prejudice to any future request to discharge the Loan should Lewis's circumstances change. *See* 11 U.S.C. § 523(b).

*##END##*



An official website of the United States government
Here's how you know

THE UNITED STATES
DEPARTMENT of JUSTICE
ANS TESTING

## Census Bureau, IRS Data and Administrative Expenses Multipliers

(Cases Filed Between May 1, 2019 and October 31, 2019, Inclusive)

### Section I. Census Bureau Data

In Part 2 of Bankruptcy Form 122A-1 and Part 2 of Bankruptcy Form 122C-1, debtors are instructed to "Fill in the median income for your state and size of household." This information is published by the Census Bureau, and the data is updated each year. In addition, pursuant to 11 U.S.C. § 101(39A)(B), the data on this Web site will be further adjusted early each calendar year based upon the Consumer Price Index for All Urban Consumers (CPI).

The following link provides the median family income data published in September 2018 and CPI-adjusted in January 2019, reproduced in a format that is designed for ease of use in completing these bankruptcy forms.

**Median Family Income Based on State/Territory and Family Size**

Available for download in MS Excel format. [XLS - 39 kb] [XLSX - 15 kb]

### Section II. IRS Data & General Information for Completing Bankruptcy Forms

**Note:** The IRS expense figures posted on this Web site are for use in completing bankruptcy forms. They are not for use in computing taxes or for any other tax administration purpose. Expense information for tax purposes can be found on the IRS Web site. In addition, the following language is taken directly from the IRS Collection Financial Standards available at the IRS Web site noted above. The IRS Collection Financial Standards use the word "taxpayer" and this reference has been unchanged for purposes of publishing the Standards for use in bankruptcy cases.

**1. General Information Regarding IRS Collection Financial Standards**

Collection Financial Standards are used to help determine a taxpayer's ability to pay a delinquent tax liability. Allowable living expenses include those expenses that meet the necessary expense test. The necessary expense test is defined as expenses that are necessary to provide for a taxpayer's (and his or her family's) health and welfare and/or production of income.

National Standards for food, clothing and other items apply nationwide. Taxpayers are allowed the total National Standards amount for their family size, without questioning the amount actually spent.

National Standards have also been established for minimum allowances for out-of-pocket health care expenses. Taxpayers and their dependents are allowed the standard amount on a per person basis, without questioning the amount actually spent.

Maximum allowances for housing and utilities and transportation, known as the Local Standards, vary by location. In most cases, the taxpayer is allowed the amount actually spent, or the local standard, whichever is less.

Generally, the total number of persons allowed for necessary living expenses should be the same as those allowed as exemptions on the taxpayer's most recent year income tax return.

If the IRS determines that the facts and circumstances of a taxpayer's situation indicate that using the standards is inadequate to provide for basic living expenses, we may allow for actual expenses. However,

Ex.A

taxpayers must provide documentation that supports a determination that using national and local expense standards leaves them an inadequate means of providing for basic living expenses.

## 2. National Standards: Food Clothing & Other Items

**National Standards** have been established for five necessary expenses: food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous.

The standards are derived from the Bureau of Labor Statistics (BLS) Consumer Expenditure Survey (CES). The survey collects information from the Nation's households and families on their buying habits (expenditures), income and household characteristics.

Available for download in MS Excel format. [XLS - 28 kb] [XLSx - 12 kb]

## 3. National Standards: Out-of-Pocket Health Care Expenses

**Out-of-Pocket Health Care standards** have been established for out-of-pocket health care expenses including medical services, prescription drugs, and medical supplies (e.g. eyeglasses, contact lenses, etc.).

The table for health care allowances is based on Medical Expenditure Panel Survey data and uses an average amount per person for taxpayers and their dependents under 65 and those individuals that are 65 and older.

The out-of-pocket health care standard amount is allowed in addition to the amount taxpayers pay for health insurance.

Available for download in MS Excel format. [XLS - 30 kb] [XLSx - 10 kb]

## 4. Local Standards. Housing and Utilities and Transportation

**a. Housing and Utilities Standards** are derived from Census and BLS data, and are provided by state down to the county level. The standard for a particular county and family size includes both housing and utilities allowed for a taxpayer's primary place of residence.

Housing and Utilities standards include mortgage or rent, property taxes, interest, insurance, maintenance, repairs, gas, electric, water, heating oil, garbage collection, telephone, cell phone, internet, and cable. The tables include five categories for one, two, three, four, and five or more persons in a household.

**Note:** Effective October 3, 2011, the IRS no longer provides Housing and Utilities Standards for the U.S. territories of Guam, the Northern Mariana Islands, and the Virgin Islands.

| Mississippi ▼ | Go |

Available for download in MS Excel format. [XLS - 1.06 MB] [XLSX - 588 KB]

**b. Transportation Expense Standards** for taxpayers with a vehicle consist of two parts:   nationwide figures for monthly loan or lease payments referred to as ownership costs, and additional amounts for monthly operating costs broken down by Census Region and Metropolitan Statistical Area (MSA). A conversion chart has been provided with the standards that lists the states that comprise each Census Region, as well as the counties and cities included in each MSA. The ownership cost portion of the transportation standard, although it applies nationwide, is still considered part of the Local Standards. The ownership costs provide maximum allowances for the lease or purchase of up to two automobiles if allowed as a necessary expense. A single taxpayer is normally allowed one automobile.

The operating costs include maintenance, repairs, insurance, fuel, registrations, licenses, inspections, parking and tolls.

If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. If a taxpayer has a car, but no car payment, only the operating costs portion of the transportation standard is used to figure the allowable transportation expense. In both of these cases, the taxpayer is allowed the amount actually spent, or the standard, whichever is less.

There is a single nationwide allowance for public transportation based on BLS expenditure data for mass transit fares for a train, bus, taxi, ferry, etc. Taxpayers with no vehicle are allowed the standard, per household, without questioning the amount actually spent.

If a taxpayer owns a vehicle and uses public transportation, expenses may be allowed for both, provided they are needed for the health, and welfare of the taxpayer or family, or for the production of income. However, the expenses allowed would be actual expenses incurred for ownership costs, operating costs and public transportation, or the standard amounts, whichever is less.

| South Census Region ▼ | Go |

Available for download in MS Excel format. [XLS - 34 kb] [XLSx - 12 kb]

## Section III. Administrative Expenses Multipliers

11 U.S.C. § 707(b)(2)(A)(ii)(III) allows a debtor who is eligible for chapter 13 to include in his/her calculation of monthly expenses the actual administrative expenses of administering a chapter 13 plan in the judicial district where the debtor resides.

The Executive Office for U.S. Trustees issues the schedules of actual administrative expenses which contain, by judicial district, the chapter 13 multiplier needed to complete Official Bankruptcy Forms 122A-2 and 122C-2. Form 122A-2 is the form certain chapter 7 debtors will complete and the multiplier is entered on Line 36; Form 122C-2 is the form certain chapter 13 debtors will complete and the multiplier is entered on Line 36.

### Schedules of Actual Administrative Expenses of Administering a Chapter 13 Plan (as Required by 11 U.S.C. § 707(b)(2)(A)(ii)(III))

Available for download in MS Excel format. [XLS - 45 kb] [XLSx - 15 kb]

**Note:**

The original source for the State Median Family Income is the Census Bureau.

The original source for the National and Local Standards is the IRS.

To report any differences between the data on these pages and their original source, please e-mail: ust.mt.help@usdoj.gov.

*Updated November 20, 2019*

Was this page helpful?
Yes    No



# Collection Financial Standards

***Disclaimer: IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. These Standards are effective on March 25, 2019 for purposes of federal tax administration only. Expense information for use in bankruptcy calculations can be found on the website for the U.S. Trustee Program.***

***We have added links below for all of the standards to enable you to download a PDF version for printing. Please note that the standards change, so if you elect to print them, check back periodically to assure you have the latest version.***

*General*

Collection Financial Standards are used to help determine a taxpayer's ability to pay a delinquent tax liability. Allowable living expenses include those expenses that meet the necessary expense test. The necessary expense test is defined as expenses that are necessary to provide for a taxpayer's (and his or her family's) health and welfare and/or production of income.

National Standards for food, clothing and other items apply nationwide. Taxpayers are allowed the total National Standards amount monthly for their family size, without questioning the amount actually spent.

National Standards have also been established for minimum allowances for out-of-pocket health care expenses. Taxpayers and their dependents are allowed the standard amount monthly on a per person basis, without questioning the amount actually spent.

Maximum allowances for monthly housing and utilities and transportation, known as the Local Standards, vary by location. In most cases, the taxpayer is allowed the amount actually spent, or the local standard, whichever is less.

Generally, the total number of persons allowed for necessary living expenses should be the same as those allowed as dependents on the taxpayer's most recent year income tax return.

If the IRS determines that the facts and circumstances of a taxpayer's situation indicate that using the standards is inadequate to provide for basic living expenses, we may allow for actual expenses. However, taxpayers must provide

Ex. B

documentation that supports a determination that using national and local expense standards leaves them an inadequate means of providing for basic living expenses.

### National Standards: Food, Clothing and Other Items

National Standards have been established for five necessary expenses: food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous.

The National Standard for Food, Clothing and Other Items includes an amount for miscellaneous expenses. This miscellaneous allowance is for expenses taxpayers may incur that are not included in any other allowable living expense items, or for any portion of expenses that exceed the Collection Financial Standards and are not allowed under a deviation.

The standards are derived from the Bureau of Labor Statistics Consumer Expenditure Survey. The survey collects information from the Nation's households and families on their buying habits (expenditures), income and household characteristics.

Additional information and the standard amounts are available on our National Standards for Food, Clothing and Other Items web page. You may also download the standards in PDF format for printing.

### National Standards: Out-of-Pocket Health Care Expenses

Out-of-Pocket Health Care standards have been established for out-of-pocket health care expenses including medical services, prescription drugs, and medical supplies (e.g. eyeglasses, contact lenses, etc.).

The table for health care allowances is based on Medical Expenditure Panel Survey data and uses an average amount per person for taxpayers and their dependents under 65 and those individuals that are 65 and older.

The out-of-pocket health care standard amount is allowed in addition to the amount taxpayers pay for health insurance.

You may also download the standards in PDF format for printing. Additional information and the standard amounts are available on our Out-of-Pocket Health Care Standards web page.

### Local Standards: Housing and Utilities

The housing and utilities standards are derived from U.S. Census Bureau, American Community Survey and BLS data, and are provided by state down to the county level. The standard for a particular county and family size includes both housing

and utilities allowed for a taxpayer's primary place of residence. Housing and utilities standards are also provided for Puerto Rico.

Housing and Utilities standards include mortgage or rent, property taxes, interest, insurance, maintenance, repairs, gas, electric, water, heating oil, garbage collection, residential telephone service, cell phone service, cable television, and Internet service. The tables include five categories for one, two, three, four, and five or more persons in a household.

Additional information and the standard amounts are available by state or territory on our Housing and Utilities Standards web page. You may also download the standards in PDF format for printing. Please be advised that the housing and utilities document is 104 printed pages.

---

### Local Standards: Transportation

The transportation standards for taxpayers with a vehicle consist of two parts: nationwide figures for monthly loan or lease payments referred to as ownership costs, and additional amounts for monthly operating costs broken down by Census Region and Metropolitan Statistical Area (MSA). A conversion chart has been provided with the standards that lists the states that comprise each Census Region, as well as the counties and cities included in each MSA. The ownership cost portion of the transportation standard, although it applies nationwide, is still considered part of the Local Standards.

The ownership costs provide maximum allowances for the lease or purchase of up to two automobiles if allowed as a necessary expense. A single taxpayer is normally allowed one automobile.

The operating costs include maintenance, repairs, insurance, fuel, registrations, licenses, inspections, parking and tolls.

If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. If a taxpayer has a car, but no car payment, only the operating costs portion of the transportation standard is used to figure the allowable transportation expense. In both of these cases, the taxpayer is allowed the amount actually spent, or the standard, whichever is less.

There is a single nationwide allowance for public transportation based on BLS expenditure data for mass transit fares for a train, bus, taxi, ferry, etc. Taxpayers with no vehicle are allowed the standard, per household, without questioning the amount actually spent.

If a taxpayer owns a vehicle and uses public transportation, expenses may be allowed for both, provided they are needed for the health, and welfare of the taxpayer or family, or for the production of income. However, the expenses allowed would be actual expenses incurred for ownership costs, operating costs and public transportation, or the standard amounts, whichever is less.

Additional information and the standard amounts are available on our Transportation Standards web page. You may also download the standards in PDF format for printing.

### Six Year Rule for Repayment of Tax Liability

The Collection Financial Standards are used in cases requiring financial analysis to determine a taxpayer's ability to pay. The vast majority of installment agreements secured by Collection employees are streamlined agreements, which require little or no financial analysis and no substantiation of expenses.

In cases where taxpayers cannot full pay and do not meet the criteria for a streamlined agreement, they may still qualify for the six-year rule. The timeframe for this rule was increased in 2012 from five years to six years.

The six-year rule allows for payment of living expenses that exceed the Collection Financial Standards, and allows for other expenses, such as minimum payments on student loans or credit cards, as long as the tax liability, including penalty and interest, can be full paid in six years.

Taxpayers are required to provide financial information in these cases, but do not have to provide substantiation of reasonable expenses.

### Recent Revisions

### March 25, 2019

There were no changes to the methodology for calculating the Collection Financial Standards for 2019.

The data for the Operating Costs section of the Transportation Standards are provided by Census Region and Metropolitan Statistical Area (MSA) on the Transportation Standards web page. In 2019, the MSAs did not change.

The revised standards are effective for financial analysis conducted on or after March 25, 2019.

Rate the Small Business and Self-Employed Website

*Page Last Reviewed or Updated: 30-May-2019*



# National Standards: Food, Clothing and Other Items

*Disclaimer: IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. These Standards are effective on March 25, 2019 for purposes of federal tax administration only. Expense information for use in bankruptcy calculations can be found on the website for the U.S. Trustee Program.*

Download the national standards for food, clothing and other items in PDF format for printing. Please note that the standard amounts change, so if you elect to print them, check back periodically to assure you have the latest version.

National Standards have been established for five necessary expenses: food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous.

The standards are derived from the Bureau of Labor Statistics (BLS) Consumer Expenditure Survey (CES) and defined as follows:

Food includes food at home and food away from home. Food at home refers to the total expenditures for food from grocery stores or other food stores. It excludes the purchase of nonfood items. Food away from home includes all meals and snacks, including tips, at fast-food, take-out, delivery and full-service restaurants, etc.

Housekeeping supplies includes laundry and cleaning supplies, stationery supplies, postage, delivery services, miscellaneous household products, and lawn and garden supplies.

Apparel and services includes clothing, footwear, material, patterns and notions for making clothes, alterations and repairs, clothing rental, clothing storage, dry cleaning and sent-out laundry, watches, jewelry and repairs to watches and jewelry.

Personal care products and services includes products for the hair, oral hygiene products, shaving needs, cosmetics and bath products, electric personal care appliances, and other personal care products.

The miscellaneous allowance is for expenses taxpayers may incur that are not included in any other allowable living expense items, or for any portion of expenses that exceed the Collection Financial Standards and are not allowed under a deviation. Taxpayers can use the miscellaneous allowance to pay for expenses that exceed the standards, or for other expenses such as credit card payments, bank fees and charges, reading material and school supplies.

### Related Topics

- Collection Financial Standards

Ex. C

Taxpayers are allowed the total National Standards amount monthly for their family size, without questioning the amounts they actually spend. If the amount claimed is more than the total allowed by the National Standards for food, housekeeping supplies, apparel and services, and personal care products and services, the taxpayer must provide documentation to substantiate those expenses are necessary living expenses. Deviations from the standard amount are not allowed for miscellaneous expenses. Generally, the total number of persons allowed for National Standards should be the same as those allowed as dependents on the taxpayer's most recent year income tax return.

| Expense | One Person | Two Persons | Three Persons | Four Persons |
|---|---|---|---|---|
| Food | $386 | $685 | $786 | $958 |
| Housekeeping supplies | $40 | $72 | $76 | $76 |
| Apparel & services | $88 | $159 | $169 | $243 |
| Personal care products & services | $43 | $70 | $76 | $91 |
| Miscellaneous | $170 | $302 | $339 | $418 |
| *Total* | **$727** | **$1,288** | **$1,446** | **1,786** |

### More than four persons

| | Additional Persons Amount |
|---|---|
| For each additional person, add to four-person total allowance: | $420 |

Rate the Small Business and Self-Employed Website

*Page Last Reviewed or Updated: 30-May-2019*

 **IRS**

# National Standards: Out-of-Pocket Health Care

*Disclaimer: IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. These Standards are effective on March 25, 2019 for purposes of federal tax administration only. Expense information for use in bankruptcy calculations can be found on the website for the U.S. Trustee Program.*

**Related Topics**

- Local Standards Housing and Utilities

Download the out-of-pocket health care standards in PDF format for printing. Please note that the standard amounts change, so if you elect to print them, check back periodically to assure you have the latest version.

The table for health care expenses, based on Medical Expenditure Panel Survey data, has been established for minimum allowances for out-of-pocket health care expenses.

Out-of-pocket health care expenses include medical services, prescription drugs, and medical supplies (e.g. eyeglasses, contact lenses, etc.). Elective procedures such as plastic surgery or elective dental work are generally not allowed.

Taxpayers and their dependents are allowed the standard amount monthly on a per person basis, without questioning the amounts they actually spend.  If the amount claimed is more than the total allowed by the health care standards, the taxpayer must provide documentation to substantiate those expenses are necessary living expenses. Generally, the number of persons allowed should be the same as those allowed as dependents on the taxpayer's most recent year income tax return.

The out-of-pocket health care standard amount is allowed in addition to the amount taxpayers pay for health insurance.

**Out of Pocket Costs**

| | |
|---|---|
| Under 65 | $55 |
| 65 and Older | $114 |

Rate the Small Business and Self-Employed Website

Ex. D

*Page Last Reviewed or Updated: 29-Jul-2019*



# Mississippi - Local Standards: Housing and Utilities

*Disclaimer: IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. These Standards are effective on March 25, 2019 for purposes of federal tax administration only. Expense information for use in bankruptcy calculations can be found on the website for the U.S. Trustee Program.*

**Related Topics**

- Local Standards Housing and Utilities

The housing and utilities standards are derived from U.S. Census Bureau, American Community Survey and Bureau of Labor Statistics data, and are provided by state down to the county level. The standard for a particular county and family size includes both housing and utilities allowed for a taxpayer's primary place of residence. Generally, the total number of persons allowed for determining family size should be the same as those allowed as exemptions on the taxpayer's most recent year income tax return.

Housing and utilities standards include mortgage or rent, property taxes, interest, insurance, maintenance, repairs, gas, electric, water, heating oil, garbage collection, residential telephone service, cell phone service, cable television, and Internet service. The tables include five categories for one, two, three, four, and five or more persons in a household.

The taxpayer is allowed the standard amount, or the amount actually spent on housing and utilities, whichever is less. If the amount claimed is more than the total allowed by the housing and utilities standards, the taxpayer must provide documentation to substantiate those expenses are necessary living expenses.

Maximum Monthly Allowance

| County | 2019 Published Housing and Utilities for a Family of 1 | 2019 Published Housing and Utilities for a Family of 2 | 2019 Published Housing and Utilities for a Family of 3 | 2019 Published Housing and Utilities for a Family of 4 | 2019 Published Housing and Utilities for a Family of 5 |
|---|---|---|---|---|---|

Ex. E

| | | | | | |
|---|---|---|---|---|---|
| Adams County | 998 | 1,172 | 1,235 | 1,377 | 1,399 |
| Alcorn County | 1,054 | 1,237 | 1,304 | 1,454 | 1,477 |
| Amite County | 1,079 | 1,267 | 1,335 | 1,489 | 1,513 |
| Attala County | 992 | 1,165 | 1,228 | 1,369 | 1,391 |
| Benton County | 1,009 | 1,185 | 1,249 | 1,393 | 1,415 |
| Bolivar County | 1,134 | 1,331 | 1,403 | 1,564 | 1,590 |
| Calhoun County | 930 | 1,092 | 1,151 | 1,283 | 1,304 |
| Carroll County | 1,046 | 1,229 | 1,295 | 1,444 | 1,467 |
| Chickasaw County | 1,029 | 1,209 | 1,274 | 1,421 | 1,443 |
| Choctaw County | 917 | 1,077 | 1,135 | 1,266 | 1,286 |

| | | | | | |
|---|---|---|---|---|---|
| Claiborne County | 941 | 1,106 | 1,165 | 1,299 | 1,320 |
| Clarke County | 1,012 | 1,189 | 1,253 | 1,397 | 1,420 |
| Clay County | 1,008 | 1,184 | 1,248 | 1,392 | 1,414 |
| Coahoma County | 1,040 | 1,221 | 1,287 | 1,435 | 1,458 |
| Copiah County | 1,096 | 1,287 | 1,356 | 1,512 | 1,536 |
| Covington County | 1,111 | 1,305 | 1,375 | 1,533 | 1,558 |
| DeSoto County | 1,302 | 1,530 | 1,612 | 1,797 | 1,826 |
| Forrest County | 1,183 | 1,389 | 1,464 | 1,632 | 1,659 |
| Franklin County | 1,051 | 1,235 | 1,301 | 1,451 | 1,474 |
| George County | 1,145 | 1,345 | 1,417 | 1,580 | 1,605 |

| | | | | | |
|---|---|---|---|---|---|
| Greene County | 1,138 | 1,336 | 1,408 | 1,570 | 1,595 |
| Grenada County | 1,004 | 1,180 | 1,243 | 1,386 | 1,408 |
| Hancock County | 1,239 | 1,456 | 1,534 | 1,710 | 1,738 |
| Harrison County | 1,306 | 1,534 | 1,616 | 1,802 | 1,831 |
| Hinds County | 1,190 | 1,398 | 1,473 | 1,642 | 1,669 |
| Holmes County | 961 | 1,128 | 1,189 | 1,326 | 1,347 |
| Humphreys County | 1,028 | 1,207 | 1,272 | 1,418 | 1,441 |
| Issaquena County | 1,180 | 1,386 | 1,461 | 1,629 | 1,655 |
| Itawamba County | 1,028 | 1,207 | 1,272 | 1,418 | 1,441 |
| Jackson County | 1,289 | 1,514 | 1,595 | 1,778 | 1,807 |

| | | | | |
|---|---|---|---|---|
| Jasper County | 969 | 1,138 | 1,199 | 1,337 | 1,358 |
| Jefferson County | 965 | 1,133 | 1,194 | 1,331 | 1,353 |
| Jefferson Davis County | 984 | 1,156 | 1,218 | 1,358 | 1,380 |
| Jones County | 1,079 | 1,267 | 1,335 | 1,489 | 1,513 |
| Kemper County | 984 | 1,156 | 1,218 | 1,358 | 1,380 |
| Lafayette County | 1,357 | 1,594 | 1,680 | 1,873 | 1,903 |
| Lamar County | 1,392 | 1,635 | 1,723 | 1,921 | 1,952 |
| Lauderdale County | 1,144 | 1,344 | 1,416 | 1,579 | 1,604 |
| Lawrence County | 1,037 | 1,219 | 1,284 | 1,432 | 1,455 |
| Leake County | 1,075 | 1,263 | 1,331 | 1,484 | 1,508 |

| | | | | | |
|---|---|---|---|---|---|
| Lee County | 1,193 | 1,402 | 1,477 | 1,647 | 1,673 |
| Leflore County | 1,068 | 1,255 | 1,322 | 1,474 | 1,498 |
| Lincoln County | 1,161 | 1,364 | 1,437 | 1,602 | 1,628 |
| Lowndes County | 1,178 | 1,384 | 1,458 | 1,626 | 1,652 |
| Madison County | 1,514 | 1,778 | 1,874 | 2,090 | 2,123 |
| Marion County | 1,050 | 1,233 | 1,299 | 1,448 | 1,472 |
| Marshall County | 1,167 | 1,370 | 1,444 | 1,610 | 1,636 |
| Monroe County | 1,056 | 1,240 | 1,307 | 1,457 | 1,481 |
| Montgomery County | 1,070 | 1,256 | 1,324 | 1,476 | 1,500 |
| Neshoba County | 1,034 | 1,215 | 1,280 | 1,427 | 1,450 |

| | | | | | |
|---|---|---|---|---|---|
| Newton County | 1,054 | 1,238 | 1,305 | 1,455 | 1,479 |
| Noxubee County | 910 | 1,069 | 1,126 | 1,255 | 1,276 |
| Oktibbeha County | 1,269 | 1,491 | 1,571 | 1,752 | 1,780 |
| Panola County | 1,056 | 1,240 | 1,307 | 1,457 | 1,481 |
| Pearl River County | 1,220 | 1,433 | 1,510 | 1,684 | 1,711 |
| Perry County | 995 | 1,169 | 1,232 | 1,374 | 1,396 |
| Pike County | 1,088 | 1,278 | 1,347 | 1,502 | 1,526 |
| Pontotoc County | 1,026 | 1,205 | 1,270 | 1,416 | 1,439 |
| Prentiss County | 999 | 1,173 | 1,236 | 1,378 | 1,400 |
| Quitman County | 937 | 1,101 | 1,160 | 1,293 | 1,314 |

| | | | | | |
|---|---|---|---|---|---|
| Rankin County | 1,276 | 1,498 | 1,579 | 1,761 | 1,789 |
| Scott County | 1,074 | 1,261 | 1,329 | 1,482 | 1,506 |
| Sharkey County | 1,152 | 1,353 | 1,426 | 1,590 | 1,616 |
| Simpson County | 1,109 | 1,303 | 1,373 | 1,531 | 1,556 |
| Smith County | 1,052 | 1,236 | 1,302 | 1,452 | 1,475 |
| Stone County | 1,207 | 1,418 | 1,494 | 1,666 | 1,693 |
| Sunflower County | 999 | 1,174 | 1,237 | 1,379 | 1,402 |
| Tallahatchie County | 953 | 1,119 | 1,179 | 1,315 | 1,336 |
| Tate County | 1,211 | 1,423 | 1,499 | 1,671 | 1,698 |
| Tippah County | 984 | 1,156 | 1,218 | 1,358 | 1,380 |

| | | | | |
|---|---|---|---|---|
| Tishomingo County | 976 | 1,146 | 1,208 | 1,347 | 1,369 |
| Tunica County | 1,075 | 1,263 | 1,331 | 1,484 | 1,508 |
| Union County | 1,053 | 1,237 | 1,303 | 1,453 | 1,476 |
| Walthall County | 1,041 | 1,222 | 1,288 | 1,436 | 1,459 |
| Warren County | 1,194 | 1,403 | 1,478 | 1,648 | 1,675 |
| Washington County | 1,067 | 1,253 | 1,320 | 1,472 | 1,496 |
| Wayne County | 1,075 | 1,262 | 1,330 | 1,483 | 1,507 |
| Webster County | 1,034 | 1,215 | 1,280 | 1,427 | 1,450 |
| Wilkinson County | 940 | 1,104 | 1,163 | 1,297 | 1,318 |
| Winston County | 1,042 | 1,224 | 1,290 | 1,438 | 1,462 |

| | | | | | |
|---|---|---|---|---|---|
| Yalobusha County | 1,025 | 1,204 | 1,269 | 1,415 | 1,438 |
| Yazoo County | 1,050 | 1,233 | 1,299 | 1,448 | 1,472 |

Rate the Small Business and Self-Employed Website

*Page Last Reviewed or Updated: 15-Mar-2019*



# Local Standards: Transportation

*Disclaimer:* IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. These Standards are effective on March 25, 2019 for purposes of federal tax administration only. Expense information for use in bankruptcy calculations can be found on the website for the U.S. Trustee Program.

Download the transportation standards in PDF format for printing. Please note that the standard amounts change, so if you elect to print them, check back periodically to assure you have the latest version.

The transportation standards for taxpayers with a vehicle consist of two parts: nationwide figures for monthly loan or lease payments referred to as ownership costs, and additional amounts for monthly operating costs. The operating costs include maintenance, repairs, insurance, fuel, registrations, licenses, inspections, parking and tolls (These standard amounts do not include personal property taxes).

**Related Topic**

- Collection Financial Standards

## Ownership Costs

The ownership costs, shown in the table below, provide the monthly allowances for the lease or purchase of up to two automobiles. A single taxpayer is normally allowed one automobile. For each automobile, taxpayers will be allowed the lesser of:

a. the monthly payment on the lease or car loan, or
b. the ownership costs shown in the table below.

If a taxpayer has no lease or car loan payment, the amount allowed for Ownership Costs will be $0.

## Operating Costs

In addition to Ownership Costs, a taxpayer is allowed Operating Costs, by regional and metropolitan area, as shown in the table below. For each automobile, taxpayers will be allowed the lesser of:

a. the amount actually spent monthly for operating costs, or
b. the operating costs shown in the table below.

## Public Transportation

Ex. F

There is a single nationwide allowance for public transportation based on Bureau of Labor Statistics expenditure data for mass transit fares for a train, bus, taxi, ferry, etc. Taxpayers with no vehicle are allowed the standard amount monthly, per household, without questioning the amount actually spent.

If a taxpayer owns a vehicle and uses public transportation, expenses may be allowed for both, provided they are needed for the health and welfare of the taxpayer or family, or for the production of income. However, the expenses allowed would be actual expenses incurred for ownership costs, operating costs and public transportation, or the standard amounts, whichever is less.

If the amount claimed for Ownership Costs, Operating Costs or Public Transportation is more than the total allowed by the transportation standards, the taxpayer must provide documentation to substantiate those expenses are necessary living expenses.

**Public Transportation**

| | |
|---|---|
| **National** | $217 |

**Ownership Costs**

| | One Car | Two Cars |
|---|---|---|
| **National** | $508 | $1,016 |

**Operating Costs**

| | One Car | Two Cars |
|---|---|---|
| **Northeast Region** | $237 | $474 |
| Boston | $230 | $460 |

|  | One Car | Two Cars |
|---|---|---|
| New York | $319 | $638 |
| Philadelphia | $244 | $488 |
| **Midwest Region** | $191 | $382 |
| Chicago | $208 | $416 |
| Cleveland | $191 | $382 |
| Detroit | $277 | $554 |
| Minneapolis-St. Paul | $197 | $394 |
| St. Louis | $190 | $380 |
| **South Region** | $210 | $420 |
| Atlanta | $240 | $480 |
| Baltimore | $258 | $516 |
| Dallas-Ft. Worth | $281 | $562 |

|  | One Car | Two Cars |
|---|---|---|
| Houston | $287 | $574 |
| Miami | $316 | $632 |
| Tampa | $236 | $472 |
| Washington, D.C. | $242 | $484 |
| **West Region** | $205 | $410 |
| Anchorage | $179 | $358 |
| Denver | $212 | $424 |
| Honolulu | $191 | $382 |
| Los Angeles | $273 | $546 |
| Phoenix | $233 | $466 |
| San Diego | $255 | $510 |
| San Francisco | $212 | $424 |
| Seattle | $268 | $536 |

# For Use with 2019 Allowable Transportation Table

The data for the Operating Costs section of the Transportation Standards are provided by Census Region and Metropolitan Statistical Area (MSA). The following table lists the states that comprise each Census Region. Once the taxpayer's Census Region has been ascertained, to determine if an MSA standard is applicable, use the definitions below to see if the taxpayer lives within an MSA (MSAs are defined by county and city, where applicable). If the taxpayer does not reside in an MSA, use the regional standard.

## MSA Definitions by Census Region

**Northeast Census Region:** Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, Pennsylvania, New York, New Jersey

| MSA | Counties |
|---|---|
| **Boston** | *in* MA: Essex, Middlesex, Norfolk, Plymouth, Suffolk |
| | *in* NH: Rockingham, Strafford |
| **New York** | *in* NY: Bronx, Dutchess, Kings, Nassau, New York, Orange, Putnam, Queens, Richmond, Rockland, Suffolk, Westchester |
| | *in* NJ: Bergen, Essex, Hudson, Hunterdon, Middlesex, Monmouth, Morris, Ocean, Passaic, Somerset, Sussex, Union |
| | *in* PA: Pike |
| **Philadelphia** | *in* PA: Bucks, Chester, Delaware, Montgomery, Philadelphia |
| | *in* NJ: Burlington, Camden, Gloucester, Salem |

*in* DE: New Castle

*in* MD: Cecil

**Midwest Census Region**:  North Dakota, South Dakota, Nebraska, Kansas, Missouri, Illinois, Indiana, Ohio, Michigan, Wisconsin, Minnesota, Iowa

| MSA | Counties (unless otherwise specified) |
|---|---|
| **Chicago** | *in* IL: Cook, DeKalb, DuPage, Grundy, Kane, Kendall, Lake, McHenry, Will |
| | *in* IN: Jasper, Lake, Newton, Porter |
| | *in* WI: Kenosha |
| **Cleveland** | *in* OH: Ashtabula, Cuyahoga, Geauga, Lake, Lorain, Medina, Portage, Summit |
| **Detroit** | *in* MI: Lapeer, Livingston, Macomb, Oakland, St. Clair, Wayne |
| **Minneapolis-St. Paul** | *in* MN: Anoka, Carver, Chisago, Dakota, Hennepin, Isanti, Le Sueur, Mille Lacs, Ramsey, Scott, Sherburne, Sibley, Washington, Wright |
| | *in* WI: Pierce, St. Croix |
| **St. Louis** | *in* MO: Franklin, Jefferson, Lincoln, St. Charles, St. Louis county, Warren, St. Louis city |

*in IL*: Bond, Calhoun, Clinton, Jersey, Macoupin, Madison, Monroe, St. Clair

**South Census Region:** Texas, Oklahoma, Arkansas, Louisiana, Mississippi, Tennessee, Kentucky, West Virginia, Virginia, Maryland, District of Columbia, Delaware, North Carolina, South Carolina, Georgia, Florida, Alabama

| MSA | Counties (unless otherwise specified) |
| --- | --- |
| **Atlanta** | *in GA*: Barrow, Bartow, Butts, Carroll, Cherokee, Clayton, Cobb, Coweta, Dawson, DeKalb, Douglas, Fayette, Forsyth, Fulton, Gwinnett, Haralson, Heard, Henry, Jasper, Lamar, Meriwether, Morgan, Newton, Paulding, Pickens, Pike, Rockdale, Spalding, Walton |
| **Baltimore** | *in MD*: Anne Arundel, Baltimore county, Carroll, Harford, Howard, Queen Anne's, Baltimore city |
| **Dallas-Ft. Worth** | *in TX*: Collin, Dallas, Denton, Ellis, Hood, Hunt, Johnson, Kaufman, Parker, Rockwall, Somervell,  Tarrant, Wise |
| **Houston** | *in TX*: Austin, Brazoria, Chambers, Fort Bend, Galveston, Harris, Liberty, Montgomery, Waller |
| **Miami** | *in FL*: Broward, Miami-Dade, Palm Beach |
| **Tampa** | *in FL*: Hernando, Hillsborough, Pasco, Pinellas |
| **Washington, D.C.** | *in DC*: District of Columbia |

*in* MD: Calvert, Charles, Frederick, Montgomery, Prince George

*in* VA: Arlington, Clarke, Culpeper, Fairfax county, Fauquier, Loudoun, Prince William, Rappahannock, Spotsylvania, Stafford, Warren, Alexandria city, Fairfax city, Falls Church city, Fredericksburg city, Manassas city, Manassas Park city

*in* WV: Jefferson

**West Census Region:**  New Mexico, Arizona, Colorado, Wyoming, Montana, Nevada, Utah, Washington, Oregon, Idaho, California, Alaska, Hawaii

| MSA | Counties (unless otherwise specified) |
| --- | --- |
| **Anchorage** | *in* AK: Anchorage, Matanuska-Susitna |
| **Denver** | *in* CO: Adams, Arapahoe, Broomfield, Clear Creek, Denver, Douglas, Elbert, Gilpin, Jefferson, Park |
| **Honolulu** | *in* HI: Honolulu |
| **Los Angeles** | *in* CA: Los Angeles, Orange, Riverside, San Bernardino |
| **Phoenix** | *in* AZ: Maricopa, Pinal |
| **San Diego** | *in* CA: San Diego |

| | |
|---|---|
| **San Francisco** | *in* CA: Alameda, Contra Costa, Marin, San Francisco, San Mateo |
| **Seattle** | *in* WA: King, Pierce, Snohomish |

Rate the Small Business and Self-Employed Website

*Page Last Reviewed or Updated: 29-Jul-2019*